Annick M. Persinger (CBN 272996)
*apersinger@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
P: 510-254-6808

Andrea R. Gold (*pro hac vice)*
*agold@tzlegal.com*
David A. McGee (*pro hac vice)*
*dmcgee@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
P: 202-973-0950

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Stephan Herrick, on Behalf of Himself and All Others Similarly Situated,

*Plaintiff,*

v.

TTE TECHNOLOGY, INC., dba TCL NORTH AMERICA,

*Defendant.*

Case No. 5:25-cv-00945-SB-SP
Judge: Hon. Stanley Blumenfeld Jr.

**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT FOR:**

1. **Violations of California's Unfair Competition Law, Business and Professions Code, § 17200 *et seq*.**
2. **Violations of California's False Advertising Law, Business and Professions Code, § 17500 et seq.**
3. **Violations of California's Consumer Legal Remedies Act, California Civil Code, § 1750 et seq.**
4. **Unjust Enrichment**
5. **Fraud**
6. **Negligent Misrepresentation**

(JURY TRIAL DEMANDED)

## CLASS ACTION COMPLAINT

1. Plaintiff Stephan Herrick, individually and on behalf of all others similarly situated, by and through counsel, brings this action against TTE Technology, Inc., d/b/a TCL North America ("TCL"). Plaintiff's allegations herein are based upon personal knowledge and belief as to their own acts and upon the investigation of their counsel, including information received from class members who have experienced TCL televisions either (i) failing to have quantum dot light-emitting diode technology ("QLED") or (ii) having QLED technology present in such minimal amounts that it does not meaningfully contribute to the performance or display output of the television thereby making the QLED technology functionally irrelevant to the performance or display of the television (collectively the "QLED Deficiency") despite being advertised as having such technology as described herein, and information and belief as to all other matters.

## INTRODUCTION

2. Plaintiff brings this action, individually and on behalf of a Class of similarly situated owners of TCL QLED televisions ("TV(s)"). This action arises from TCL's concealment of the technical specifications and display performance of its QLED televisions, and its related false advertising that certain of its QLED televisions, while advertised as having QLED technology, do not actually contain QLED technology or, if QLED technology is present, it is present in such minimal amounts that it does not meaningfully contribute to the performance or display output of the television, thereby making a claim the television is a QLED television and the advertised benefits of the QLED technology misleading.

3. TCL has been aware that its QLED televisions do not have the advertised QLED technology (or include negligible amounts of the technology as to not provide the advertised benefits). Notwithstanding its knowledge, TCL continues to advertise that certain of its QLED televisions have QLED technology when they, in fact, do not contain QLED technology or include the technology in

such negligible amounts as to not provide the advertised benefits. Through this conduct, TCL engages in unfair, deceptive, and fraudulent conduct with the intent to deceive the consuming public.

4. As a result of TCL's unfair, deceptive, and/or fraudulent business practices, owners of TCL QLED televisions, including Plaintiff, have suffered ascertainable losses. The unfair and deceptive practices committed by TCL were conducted in a manner giving rise to substantial aggravating circumstances.

5. Had Plaintiff and other Class Members known about the QLED Deficiency at the time of purchase, they would not have bought the TCL QLED televisions, or would have paid substantially less for them.

6. TCL advertises that its televisions include QLED technology, despite its knowledge to the contrary, in order to charge a premium price to consumers. Accordingly, Plaintiff and putative Class Members paid a premium for technology that the televisions did not contain (or contained in such negligible amounts as to not provide the advertised benefits). Plaintiff and the putative Class Members suffered an injury in fact, incurred damages, and otherwise have been harmed by TCL's conduct.

7. Accordingly, Plaintiff brings this action to redress TCL's violations of California's consumer fraud statutes, California's false advertising statutes, fraud, and negligent misrepresentation.

## THE PARTIES

8. Plaintiff Stephan Herrick is a resident and citizen of the state of California who resides in Fontana (San Bernardino County), California. On or about July 17, 2024, while a resident of California, Plaintiff Stephan Herrick purchased a new TCL television for personal use that TCL sold through Amazon. Amazon delivered the TCL TV to Stephan Herrick's home in California.

9. Defendant TTE Technology, Inc., dba TCL North America (hereafter, "TCL" or "Defendant"), is a Delaware Corporation, with its principal place of

business located within Orange County at 189 Technology Dr., Irvine, CA 92618. Accordingly, Defendant is a resident of the states of Delaware and California.

## JURISDICTION AND VENUE

10. Jurisdiction over Defendant and venue in Orange County Superior Court is proper because Defendant is headquartered in Orange County, conducts substantial business in Orange County, and because the acts and omissions complained of herein occurred within this county. If the case is remanded, Plaintiff consents to jurisdiction and venue in Orange County Superior Court.

11. At the time of filing the original complaint, the Riverside County Superior Court had subject matter jurisdiction over this class action pursuant to Cal. Code of Civ. Proc. § 410.10, Cal. Civ. Code § 1780(c), and Cal. Bus. and Prof. Code §§ 17203, 17535. Orange County Superior Court would have subject matter jurisdiction for the same reasons. After filing the original complaint, Defendant removed to this Court pursuant to the Class Action Fairness Act. Plaintiff maintains that Defendant's notice of removal did not confer this Court with subject matter jurisdiction, and at the time of filing the amended complaint, this issue is currently before the Court.

## GENERAL ALLEGATIONS

### A. TCL Televisions

12. TCL is headquartered in Irvine, California and sells televisions throughout the United States through numerous retailers such as Amazon, Best Buy, Target, and Walmart.

13. TCL is one of the leading sellers of televisions in the United States and is now the fastest growing TV brand in North America.[1]

14. Televisions are a product in high demand sold at various prices for a

[1] TCL, *TCL Celebrates its Five-Year Anniversary in North America with Stronger Than Ever Sales and a New Line of Premium TVs*, Business Insider https://markets.businessinsider.com/news/stocks/tcl-celebrates-its-five-year-anniversary-in-north-america-with-stronger-than-ever-sales-and-a-new-line-of-premium-tvs-1028509304 (last visited June 13, 2025).

substantial profit.

15. The television market changes frequently and is highly competitive. TCL sells its televisions through retailers (both at brick-and-mortar stores and online), which would be expected to cease offering TCL products if those products could not be sold at a profit or if consumers preferred a competing brand.

16. Consumer demand is affected by the technical specifications of televisions, including the display technology specification.

17. Thus, to remain competitive and stimulate consumer demand, TCL must advertise attractive technical specifications at competitive prices. If consumers were to view TCL televisions as less technologically advanced and choose another brand, it would have a materially adverse effect on TCL's sales and its financial condition.

**B. <u>Quantum Dot Display Technology: A Primer and its Importance</u>**

18. Today's standard television is commercially known as a Light-emitting diode ("LED") television. LED televisions utilize a Liquid-crystal display ("LCD") and many LEDs to create images on the television.

19. LEDs serve as the backlight for the television, emitting different colors and brightness levels when electrical currents pass through them.

20. The LCD is placed in front of the backlight and allows or blocks light from the LED, as dictated by the image to be displayed on the screen.

21. The LCD is divided into millions of tiny sections, called pixels, which can be turned on or off to allow light and color to pass through from the backlight and create a particular image on the television.

22. LED televisions are commonplace in the television market today largely in part to their picture quality which generally provides for better brightness, contrast, and a wider color spectrum than Cathode Ray Tube televisions, which LEDs have replaced in the market.

23. A recent development in LED televisions has been the implementation

of quantum dot technology.

24. A quantum dot is a human-made nanoparticle that ranges in size. The size of a quantum dot determines the wavelength of light it emits and, in turn, the color it emits.

25. Quantum dots are made using semiconductor materials such as metals.

26. Quantum dot technology is implemented in televisions by applying the quantum dots to a sheet of film or panel that sits between the LED backlight and the LCD.

27. Quantum dots absorb the blue light from LEDs and re-emit pure red and green color to improve the capabilities of the LCD and allow it to reveal a wider and more saturated range of colors compared to a standard LED television.

28. As a result of the improvement in color and saturation from quantum dot technology, several major television brands have implemented this technology into their televisions including Samsung, Vizio, Sony, and LG.

29. Televisions implementing quantum dot technology are marketed as QLED or Quantum Dot ("QD") televisions.

30. In order to be considered a QLED (or QD) television, the television must actually include quantum dot technology, or otherwise include quantum dot technology in a sufficient manner for the technology to actually provide a meaningful improvement in the television's performance. Any television that fails to include quantum dot technology (or includes only a negligible amount of the technology such that it fails to provide a meaningful improvement in performance or display technology) is *not* a QLED or QD television—and is only an LED television.

31. Notably, because quantum dots are produced through a chemical process, the technology leaves known chemical markers. Thus, it can be verified, through chemical analysis and/or optical testing and analysis, whether QLED technology is present in a television or is present in sufficient amounts as to provide

the advertised benefits and improvement in performance. A television that does not bear these chemical markers would only be an LED television.

32. An LED television therefore cannot, without the existence of quantum dot technology, be considered a QLED or QD television. And, even if QLED technology is present in the TV, if it does not meaningfully contribute to the performance or display of the television, it similarly cannot truly be considered a QLED or QD television.

**C. Industry Tests on TCL Televisions**

33. As reported by various news services, on September 5, 2024, Hansol Chemical, a manufacturer of materials used in television technology, commissioned tests of TCL televisions by third-party global testing and certification agencies SGS and Intertek.[2]

34. The purpose of these tests was to analyze the quantum dot capabilities of three TCL television models.

35. The models tested were the C655, C655 Pro, and the C755.

36. Each of these models were marketed by TCL as having quantum dot technology.

37. The results of the testing done on the TCL televisions found that the televisions did not contain any traces of indium or cadmium, which are both primary elements utilized for the creation of quantum dots.[3]

38. More recently, Samsung conducted testing of three televisions that TCL markets as QLEDs in the US: the 65Q651G (the same model family as Plaintiff's TCL television), 65Q681G, and 75Q651G (the same model family as

---

[2] *See* Ryan Whitwam, *Testing Shows TCL Quantum Dot TVs May Not Have Quantum Dots*, Extreme Tech, https://www.extremetech.com/electronics/testing-shows-tcl-quantum-dot-tvs-may-not-have-quantum-dots#:~:text=TCL%20claims%20to%20have%20quantum,to%20have%20no%20quantum%20dots (last visited June 13, 2025).

[3] *See* Nam Hyun-woo, *Display panel material maker files complaint against China's TCL for QD panel claim*, The Korea Times, https://www.koreatimes.co.kr/www/tech/2024/12/129_386091.html#:~:text=According%20to%20officials%2C%20Hansol%20Chemical,their%20sheets%20and%20diffuser%20plates. (last visited June 13, 2025).

Plaintiff's TCL television) and provided the results of this testing to Ars Technica.[4] Per Ars Technica, Samsung commissioned Intertek, a London headquartered testing and certification company, and the testing by Interlink revealed that none of the tested TVs had enough cadmium to be detected at a minimum detection standard of 0.5 mg/kg.[5] Further, the televisions reportedly lacked sufficient indium for detection at a minimum detection standard of 2mg/kg. Intertek is said to have tested each TV set's optical sheet, diffuser plate, and LED modules, with testing occurring in the US.[6]

39. TCL's representations concerning the fact that its TVs contain QLED technology, and that the QLED technology provides the advertised benefits, have been reviewed by organizations like Rtings.com, which tested the TCL Q651G model.[7] Rtings.com specifically "bought and tested the 75-inch TCL Q6/Q651G QLED," which is the same model as the television Plaintiff purchased.[8]

40. Rtings.com's optical testing, which utilized Rtings.com's V2.0.01 methodology[9], undermines TCL's representations. As part of its testing methodology, Rtings.com tests the panel technology in the televisions it reviews and produces spectral power distribution graphs. To perform the tests, and create the associated spectral power distribution graphs, Rtings.com utilizes a CR-250 Spectroradiometer to capture the intensity of light across all visible wavelengths.[10] This allows Rtings.com to evaluate how the panel emits light of different colors,

---

[4] *See* Scharon Harding, *Overblown quantum dot conspiracy theories make important points about QLED TVs*, ArcTehnica, https://arstechnica.com/gadgets/2025/03/overblown-quantum-dot-conspiracy-theories-make-important-points-about-qled-tvs/?comments-page=1#comments (last visited June 13, 2025).
[5] *Id.*
[6] *Id.*
[7] *See* Jacob Falato Rodrigues, Ben Trudeau, and Yannick Khong, *TCL Q6/Q651G QLED TV Review*, Rtings.com https://www.rtings.com/tv/reviews/tcl/q6-q651g-qled (last visited June 13, 2025).
[8] *Id.*
[9] *See* Adam Babcock, *Test Bench 2.0 Changelog*, Rtings.com https://www.rtings.com/tv/tests/changelogs/2-0 (describing the changes to Rtings.com made to its testing when developing the 2.0 testing protocol) (last visited June 13, 2025).
[10] *See* Adam Babcock, *QD-OLED vs. WOLED What Type of OLED Should You Buy?*, Rtings.com https://www.rtings.com/tv/learn/qd-oled-vs-woled#:~:text=The%20structures%20of%20these%20TVs,more%20precise%20on%20the%20S95C. (last visited June 13, 2025).

and the technologies employed by the panel to emit light.[11] The resulting spectral power distribution graphs are the expression of the readings captured by the spectroradiometer.

41. Rtings.com identified that that the TCL Q651G uses a "KSF phosphor coating" to produce red light, not quantum dots. The unique optical signature of KSF phosphor enables easy identification, with multiple sharp peaks between 600-650 nm. This alone supports the conclusion that TCL's televisions, and in particular, the Q651G do not contain QLED or QD technology.

42. The spectral power distribution graph Rtings.com published confirms this fact as the graph shows that the spectral power distribution for red-light emission shows color emission consistent with phosphor-based technology, not QLED or QD technology.




43. Rtings.com's testing of a purported QLED TCL television is in stark contrast to other QLED televisions Rtings.com has tested, which appear to be QLED televisions that do not have the QLED Deficiency.

44. For example, Rtings.com's testing of the Sony Bravia 9 QLED television does not conclude that the television uses a KSF phosphor coating to produce red light.[12]

45. Similarly, the spectral power distribution results Rtings.com posted for

[11] *See supra* n. 7.
[12] Samuel Breton, Ben Trudeau, and John Peroramas, *Sony Bravia 9 QLED TV Review*, Rtings.com https://www.rtings.com/tv/reviews/sony/bravia-9-qled (last visited June 13, 2025).

the Sony Bravia 9 QLED television are consistent with a television utilizing QLED or QD technology to produce red light, as opposed to a KSF phosphor.[13]




46. As such, TCL was aware, or should have been aware, that some of its televisions did not contain quantum dot technology.

47. Quantum dot technology cannot be implemented or be believed to be implemented without the existence of indium and/or cadmium materials.

48. TCL is marketing its Q651G, Q672G, and A300W televisions as having quantum dot technology when testing of the foregoing models showed that either: (i) the televisions do not have QLED technology, or (ii) that if QLED technology is present it is not meaningfully contributing to the performance or display of the televisions, meaning that they should not be advertised as QLED televisions.

### D. TCL's Practice of Falsely Advertising Quantum Dot Display Technology

49. TCL claims that it "introduced the world's first big-screen QLED TV in 2014, pioneering quantum dot color technology."[14]

50. Since then, TCL has introduced the Q651G, Q672G, and A300W television models and claimed they were QLED or QD televisions even though they

---

[13] *Id.*
[14] *See* TCL, *Our Story*, TCL.com https://www.tcl.com/us/en/about-us/our-story (last visited June 13, 2025).

did not include quantum dot technology or included QLED technology that is not meaningfully contributing to the performance or display technology in these television models that would have legitimately allowed TCL to make that claim.

51. TCL markets directly to consumers through tclusa.com. Upon information and belief, TCL approves and controls the content of tclusa.com, including the statements about quantum dot technology at issue here, from its headquarters and principal place of business in Irvine, California.

52. Upon information and belief, TCL formulates, approves, controls, and disseminates its advertising and marketing, including the statements about the quantum dot technology at issue here, at its headquarters in Irvine, California. Upon information and belief, TCL's executives and marketing personnel are employed at TCL's California headquarters.

53. For example, on TCL's website, the product page for a model Q651G QLED Television states that it is a "QLED Pro" with "Quantum Dot Technology" and the product page contains additional representations extolling the benefits of a QLED TV and QLED technology: "QLED PRO – QUANTUM DOT TECHNOLOGY Rich, vibrant colors covering nearly the entire DCI-P3 color space to bring images to life." [15]




[15] *See* TCL, *55Q651G Product Page*, TCL.com, https://www.tcl.com/us/en/products/home-theater/q6-class/55-class-4k-qled-hdr-google-tv-55q651g (last visited June 13, 2025).

54. TCL makes additional misleading and false statements in specification sheets – "Spec Sheets" on their website. For example, its specification sheet for the TCL Q651G television, TCL describes the television's display as having the following capabilities:

**Display**

| | |
|---|---|
| Display Technology | QLED |
| Panel Refresh Rate | 60Hz |
| Panel Resolution | 4K Ultra HD (3840 x 2160) |
| Display Colors | 1.07 billion |
| High Dynamic Range Format | HDR PRO+ (Dolby Vision, HDR10+, HDR10, HLG) |

55. Given at least the foregoing, TCL's marketing and listing of technical specifications of televisions that contain a QLED Deficiency as QLED or QD is misleading and untrue.

56. Not only are TCL's statements untrue and misleading, but whether a television has quantum dot technology cannot be readily verified by the consumer.

57. TCL markets the Q672G and A300W televisions in the same way, both stating that the televisions have quantum dot technology or QLED technology and stating the same in their respective "Spec sheets," despite none of these television models containing QLED technology or the QLED technology that is present does not meaningfully contribute to the television's performance or display technology.

| **Model** | **QLED Representations on Product Page** | **QLED Representations on Spec Sheet** |
|---|---|---|
| Q672G | "QLED PRO – Quantum Dot Technology"<br>"QLED PRO – QUANTUM DOT TECHNOLOGY Rich, vibrant colors | "An Easy Choice for QLED"<br>"QLED"[17] |

[17] *Id.* under "Specifications".

| | | |
|---|---|---|
| | covering nearly the entire DCI-P3 color space to bring images to life"[16] | |
| A300W | "QLED PRO – Quantum Dot Technology"<br>"QLED PRO – Quantum Dot Technology Rich, vibrant, and amazingly accurate colors bring images to life."<br>"QLED PRO – Quantum Dot Technology Rich, vibrant accurate colors bring images to life."[18] | "QLED"[19] |

58. TCL's misleading and untrue statements about the quantum dot technology of its televisions are likely to deceive consumers and are intended to try and influence their decisions to purchase a TCL television.

59. Upon information and belief, TCL also made these misleading and untrue statements so that retailers would offer TCL's televisions for sale in store and online and to motivate them to recommend TCL's televisions to consumers. If TCL's retailers did not adequately display or offer for sale TCL's televisions, then TCL's net sales would have decreased, and its business would have been harmed.

60. TCL's misleading and untrue statements about the technical specifications and performance of its televisions allowed TCL to sell its lesser-quality product at a higher price and allowed TCL to realize a profit it may not have otherwise made if it were truthful regarding the performance and display capabilities of its televisions.

## PLAINTIFF'S FACTUAL ALLEGATIONS

61. TCL markets and sells its televisions through retail stores, retail store websites, and other online sellers, such as Amazon.

---

[16] *See* TCL, *98Q672G Product Page*, TCL.com https://www.tcl.com/us/en/products/home-theater/q6-class/98-class-4k-qled-hdr-google-tv-98q672g (last visited June 13, 2025).
[18] *See* TCL, *A300W Product Page*, TCL.com https://www.tcl.com/us/en/products/home-theater/nxtframe-tv/tcl-65-class-nxtframe-4k-qled-smart-tv-with-google-tv-65a300w (last visited June 13, 2025).
[19] *Id.* under "Specifications".

62. TCL markets the Q651G television on its website and on other retailers' websites as being a QLED television; however, the television does not contain QLED technology, or if it does, the QLED technology does not meaningfully contribute to the television's performance or display technology despite being advertised as such.

63. In marketing the 55Q651G TV, which is the model Plaintiff purchased, TCL makes the following statements about the model's QLED technology "QLED Pro – Quantum Dot Technology Rich, vibrant colors covering nearly the entire DCI-P3 color space to bring images to life."[20]

64. In the "Spec Sheets," TCL markets the Q651G TV as being a QLED television.[21]

65. On or about July 17, 2024 while a resident and citizen of the State of California, Plaintiff Stephan Herrick purchased a new TCL QLED TV, model number 55Q651G from Amazon. Plaintiff Herrick purchased his TCL QLED TV for approximately $329.24. Plaintiff Herrick purchased this TCL QLED TV in part because it was supposedly a QLED television, which is supposed to provide a higher picture quality than an LED television.

66. Before he purchased this TCL television, Plaintiff Stephan Herrick reviewed the advertising on Amazon, which stated that a TCL 55Q651G TV was in fact a QLED television. Plaintiff Herrick also confirmed what he viewed on Amazon by viewing the 55Q651G TV on TCL's website, where he saw the statements noted above that it was a QLED television and the television was "QLED Pro – Quantum Dot Technology Rich, vibrant colors covering nearly the entire DCI-P3 color space bring images to life." Plaintiff Herrick also conducted research into the television before purchase, including by reading reviews of the television on Rtings.com, Tom's Guide, user experience reviews on Reddit, Techpowerup.com,

---

[20] *See* TCL, *TCL 55Q651G Produce Page*, TCL.com https://www.tcl.com/us/en/products/home-theater/q6-class/55-class-4k-qled-hdr-google-tv-55q651g (last visited June 13, 2025).
[21] *Id.*

user experience reviews on Quora, and avsforum.com. And upon receiving the television from Amazon, which came in a TCL branded box, Plaintiff Herrick saw the statements on the box that it was a QLED TV, a QClass TV, and the following language "QLED COLOR RICH, VIBRANT COLORS BRINGING IMAGES TO LIFE."

67. One of the reasons Mr. Herrick purchased a TCL 55Q651G TV was that it was advertised as QLED as he intended to purchase a QLED television because Mr. Herrick understood that a QLED TV ostensibly provided better picture quality, including more vivid colors, than a standard LED television. However, because of the QLED Deficiency, the 55Q651G television Mr. Herrick purchased did not have the advertised QLED technology, or if it is present, is not present in amounts that the television should be advertised as a QLED television.

68. As a result of TCL's false and misleading statements, Mr. Herrick paid more for his TCL television than he would have paid had the television not had the QLED Deficiency and TCL's advertising and representations concerning the television's QLED technology been truthful.

69. If Plaintiff Herrick's TCL television had the QLED technology advertised, Mr. Herrick would purchase a TCL television in the future. Alternatively, if the Court were to issue an injunction ordering TCL to comply with advertising and consumer protection laws, Mr. Herrick would likely purchase a TCL QLED television in the future.

## NO ADEQUATE REMEDY AT LAW

70. Plaintiff and class members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violation of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as

restitution because the standard that governs restitution is different than the standard that governs damages. As such, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the statutes herein entail few elements. For example, to prove a CLRA claim, a Plaintiff must generally show only that a consumer is exposed to an unlawful business practice and that the consumer was damaged by the unlawful practice (if pleading a CLRA claim based in fraud, then a Plaintiff must show reliance), and the resulting actual damages being the difference in the amount paid for a product and its actual value, disregarding any false or misleading statements. This legal remedy, and its associated damages, would not account for the full measure of damages a plaintiff be eligible to recover under equitable remedies. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

71. Equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from his purchase of a falsely advertised TCL TV is determined to be an amount less than the premium price of the product. Without compensation for the full premium price of the product, Plaintiff would be left without the parity in purchasing power to which he is entitled.

## CLASS ALLEGATIONS

72. Plaintiff incorporates and realleges the above paragraphs.

73. Plaintiff brings this suit as a class action on behalf of himself and on behalf of himself and the members of the proposed Class.

74. Plaintiff seeks to represent the following "Class":

> All California residents who, during the Class Period, purchased a TCL television, including but not limited to, model numbers Q651G, Q672G, or A300W advertised and labeled as having a "QLED" or "QD-Mini LED" display in the state of California.[22]

75. Plaintiff seeks certification of the Class for all Causes of Action. Plaintiff reserves the right to modify the class definitions or add sub-classes as necessary prior to filing a motion for class certification.

76. The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling and accrual issues, and ending on the date of entry of judgment.

77. Excluded from the Class is TCL; any affiliate, parent, or subsidiary of TCL; any entity in which TCL has a controlling interest, any officer, director, or employee of TCL; any successor or assign of TCL; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

78. <u>Numerosity/Ascertainability</u>: The members of the Class are so numerous that joinder of all members would be unfeasible and impracticable. The exact number of Class members is unknown to Plaintiff at this time; however, it is estimated that there are more than one thousand (1,000) individuals in the Class. The identity of such membership is readily ascertainable from TCL's records and the records of its retailers.

79. <u>Common Questions of Law and Fact Predominate</u>: There are common questions of law and fact as to Plaintiff and all other similarly situated individuals, which predominate over questions affecting only individual members including,

[22] Plaintiff is amending the class definition to make clear that Plaintiff is only bringing his claims on behalf of California residents.

without limitation, the following:

a. Whether TCL's statements and representations about the quantum dot technology of its televisions are false or misleading.

b. Whether TCL violated California's Unfair Competition Law ("UCL"), Business and Professions Code, § 17200 et seq., by, *inter alia*, (i) advertising its televisions as using technology that they do not use; and (ii) misrepresenting the quantum dot technology of its televisions.

c. Whether TCL violated California's False Advertising Law, Business and Professions Code § 17500 et seq., by, *inter alia*, (i) advertising its televisions as using technology that they do not use; and (ii) misrepresenting the quantum dot technology of its televisions.

d. Whether TCL violated California's Consumer Legal Remedies Act ("CLRA") causing Plaintiff and the putative class actual damage, Civil Code § 1770, by, *inter alia*, (i) representing that its televisions have characteristics, uses, or benefits, that they do not have, in violation of Ca. Civil Code § 1770(a)(5); (ii) representing that its televisions are of a particular standard, quality, or grade, when they are not, in violation of Ca. Civil Code § 1770(a)(7); or (iii) advertising its televisions with intent not to sell them as advertised, in violation of Ca. Civil Code § 1770(a)(9).

e. Whether TCL has been unjustly enriched by, inter alia, (i) advertising its televisions as using technology that they do not use; and (ii) misrepresenting the quantum dot technology of its televisions.

f. Whether TCL negligently misrepresented the technological specifications of their televisions by advertising them as having QLED display technology when they contained a QLED Deficiency.

80. Typicality: Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a TCL television that TCL represented and sold at a

higher price by claiming it had quantum dot technology, that, in reality, it did not have.

81. Adequacy of Representation: Plaintiff is fully prepared to take all necessary steps to represent fairly and adequately the interests of the members of the Class. Moreover, Plaintiff's attorneys are ready, willing and able to fully and adequately represent the members of the Class and Plaintiff. Plaintiff's attorneys are experienced in prosecuting class actions and consumer fraud and product liability cases and are committed to vigorously prosecuting this action on behalf of the members of the Class.

82. Superiority: The California statutory law on unfair competition is broadly remedial in nature and serves an important public interest in preventing or deterring unfair, deceptive, untrue or misleading advertising. The nature of this action and the format of laws available to Plaintiff and members of the Class make the class action format a particularly efficient and appropriate procedure to redress the violations alleged herein.

83. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

84. Defendant has acted or refused to act on grounds that apply generally to the Class, thereby making appropriate final injunctive and corresponding declaratory relief with respect to the Class as a whole.

85. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from

performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

86. The conduct of Defendant is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, the systematic policies and practices of Defendant make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### FOR VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, BUSINESS & PROFESSIONS CODE SECTION 17200

87. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

88. Plaintiff brings this claim on behalf of himself and the Class.

89. The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

90. TCL is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

91. TCL has engaged and continues to engage in unlawful, fraudulent and/or unfair business acts or practices in California and nationwide, as well as unfair, deceptive, untrue or misleading advertising in California and nationwide, in violation of California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200 *et seq*.

92. TCL violated the unlawful prong of § 17200 by its violation of Cal. Bus. & Prof. Code §17500 and the Consumer Legal Remedies Act, Civil Code § 1750 *et seq*., as alleged below.

93. TCL violated the fraud prong of the UCL by making statements about the quantum dot technology used in its television that are likely to deceive consumers and deceived Plaintiff.

94. TCL violated the unfair prong of the UCL because the acts and practices set forth in the Complaint offend established policy and harm Plaintiff and the Class as well as competition.

95. TCL violated the unfair, deceptive, untrue or misleading advertising prong of the UCL because the acts and practices set forth in the Complaint regarding their misrepresentations and untrue statements to Plaintiff and the Class are intended to deceive them and influence the Plaintiff's and the Class members' decision to purchase TCL's televisions.

96. TCL's utilization of these unlawful or unfair business practices, and the unfair, deceptive, untrue or misleading advertising practices, injured Plaintiff and the Class because they paid more for their televisions than they otherwise would have paid absent TCL's deceptive practices.

97. The acts complained of herein occurred within the last four years immediately preceding the filing of the Complaint in this action.

98. All the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of TCL's business. TCL's wrongful conduct is a part of a pattern of generalized course of conduct that is still perpetuated and repeated in the State of California.

99. The injuries suffered by Plaintiff and the Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class Members could have reasonably avoided.

100. Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin TCL from continuing its unfair, unlawful and/or deceptive

practices, and to restore to Plaintiff and the Class the monies that TCL acquired by means of such unfair competition.

101. As a result of Defendant's unlawful, unfair, and deceptive business acts and practices, Plaintiff and the members of the Class are entitled to an order, pursuant to Business and Professions Code § 17203, enjoining such future conduct by Defendant and such other orders and judgments that may be necessary to provide restitutionary disgorgement of Defendant's ill-gotten gains and to restore to any putative Class Member all monies paid as a result of Defendant's conduct.

## SECOND CAUSE OF ACTION

## FOR VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW, BUSINESS & PROFESSIONS CODE SECTION 17500

102. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

103. Plaintiff brings this claim on behalf of himself and the Class.

104. The California False Advertising Law ("FAL") states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device … or in any other manner or means whatsoever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue and misleading." Cal. Bus. & Prof. Code § 17500.

105. TCL caused to be made or disseminated throughout California and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to TCL, to be untrue and misleading to consumers, including Plaintiff and other Class Members.

106. TCL has violated the FAL because the misrepresentations regarding the technology and materials used in its televisions as set forth in this Complaint were material and likely to deceive a reasonable consumer. Examples of which include, but are not limited to, TCL's statements on its website for individual television models stating those televisions have "QLED" technology, statements appearing on packaging and online retailers' websites stating that its televisions have "QLED" technology, statements representing the benefits of QLED technology when such technology is not present such as that QLED technology provides "Rich, vibrant, and amazingly accurate colors bring images to life", and other similar advertising where TCL represented that its televisions have "QLED" technology. By misrepresenting the technological components of its televisions when advertising their televisions, TCL's statements were untrue or misleading.

107. Plaintiff and the other Class Members have suffered an injury in fact, including the loss of money or property, as a result of TCL's unfair, unlawful, and/or deceptive practices. In purchasing their TCL televisions, Plaintiff and the other Class Members relied on TCL's misrepresentations with respect to the technological and display specifications of their purchased televisions. TCL's representations were untrue because the televisions were manufactured and sold without containing QLED technology or if such QLED technology was present was present in such minimal amounts where the QLED technology did not enhance the performance or display technology of the TV, even while being advertised as having such technology or having certain benefits as a result of that technology being present. Had Plaintiff and other Class Members known this, they would not have purchased their televisions and/or paid as much as they did for them. Accordingly, Plaintiff and the other Class Members overpaid for their TCL televisions and did not receive the benefit of their bargain.

108. All the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of TCL's business. TCL's wrongful conduct is part of a pattern

of a generalized course of conduct that is still perpetuated and repeated throughout the United States.

109. Plaintiff, individually and on behalf of other Class Members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing their unfair, unlawful, and/or deceptive practices, and to restore to Plaintiff and the Class the monies that TCL acquired by means of such unfair competition.

**THIRD CAUSE OF ACTION**

**FOR VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE SECTION 1750**

110. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

111. Plaintiff brings this claim on behalf of himself and the Class.

112. The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. ("CRLA"), is a statute that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

113. TCL is a "person," as defined by Cal. Civ. Code §§ 1761(c) & 1770 and has provided "goods," as defined by Cal. Civ. Code §§ 1761(a) & 1770.

114. Plaintiff and the Class are "consumers," as defined by Cal. Civ. Code §§ 1761(d) & 1770, and have engaged in a "transaction," as defined by Cal. Civ. Code §§ 1761(e) & 1770.

115. TCL has engaged and continues to engage in unfair methods of competition and unfair or deceptive acts or practices intended to result or that results in the sale of goods, in violation of the CLRA, Civil Code, § 1770.

116. As alleged herein, TCL has and continues to represent that its televisions have characteristics, uses, or benefits that they do not have, in violation

of Cal. Civ. Code § 1770(a)(5).

117. As alleged herein, TCL has and continues to represent that its televisions are of a particular standard, quality, or grade, when they are not, in violation of Cal. Civ. Code § 1770(a)(7).

118. As alleged herein, TCL has and continues to advertise its televisions with intent not to sell them as advertised, in violation of Cal. Civ. Code § 1770(a)(9).

119. TCL's unfair or deceptive acts or practices occurred repeatedly in TCL's trade or business and were capable of deceiving a substantial portion of the purchasing public.

120. Throughout the Class period, TCL knew or should have known that the televisions' technology was misrepresented, did not have the display technology advertised to consumers, and that the televisions would not perform as advertised because they contained a QLED Deficiency.

121. TCL was under a duty to Plaintiff and Class Members to disclose the fact that its televisions did not have QLED technology or included negligible amounts of the technology as to not provide the advertised benefits to Plaintiff because:

a. TCL was in a superior position to know the true state of facts about the technology contained in its televisions.

b. Plaintiff and Class Members could not reasonably have been expected to learn or discover that the televisions were defective and not in accordance with TCL's advertisements and representations.

c. TCL knew that Plaintiff and the Class Members could not reasonably have been expected to learn or discover the fact that its televisions had a QLED Deficiency despite advertising that its TVs contained QLED technology; and

d. TCL actively concealed and failed to disclose to Plaintiff and Class Members the fact that its televisions advertised as having QLED

technology had a QLED Deficiency.

122. In failing to disclose that its televisions had a QLED Deficiency, TCL has knowingly and intentionally concealed material facts and breached its duty not to do so.

123. The facts concealed or not disclosed by TCL to Plaintiff and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase TCL's televisions or pay a lesser price.

124. The concealed or misrepresented facts concerning TCL television's display technology are also material because they concern central functions of the product (*e.g.*, the display performance of the TV).

125. Finally, the facts concerning the TCL televisions having the QLED Deficiency that TCL concealed or omitted from its representations to customers are also material because they contradict TCL's advertising and representations about TCL televisions' display technology and performance.

126. Had Plaintiff and the Class known about the fact that TCL televisions had a QLED Deficiency, they would not have purchased the televisions or would have paid less for them.

127. Plaintiff plausibly would have learned that TCL's televisions had the QLED Deficiency if TCL had disclosed it through ubiquitous advertising or to authorized retailers and carrier service retail locations. Plaintiff and the other Class members' injuries were proximately caused by TCL's fraudulent and deceptive business practices.

128. Plaintiff has provided TCL with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a), a true and correct copy of which is attached hereto as **Exhibit 1**.

129. The notice period having run since Plaintiff's counsel previously sent notification as required by the CLRA, Plaintiff seeks actual, punitive, and statutory

damages as appropriate, as TCL as not rectified the notified issues within 30 days of the date of written notice pursuant to Cal. Civ. Code § 1782.

130. A declaration stating facts showing that venue in this District is proper pursuant to Cal. Civ. Code § 1780(c) is attached hereto as **Exhibit 2**.

## FOURTH CAUSE OF ACTION

## UNJUST ENRICHMENT – CALIFORNIA LAW

131. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

132. Plaintiff brings this claim on behalf of himself and the Class.

133. As alleged herein, TCL advertised and sold televisions to consumers with false display technology specifications, intending that consumers would rely on those misrepresentations and purchase the televisions from TCL.

134. Had TCL advertised and sold televisions to consumers with the true display technology advertised, Plaintiff would not have purchased the television or would not have paid as much for the television.

135. TCL's material misrepresentations allowed it to sell at a higher price while saving money on the cost of a TV with actual quantum dot technology which led to profits that otherwise would not have been realized and harmed Plaintiff and the Class.

136. TCL has been knowingly and unjustly enriched to the detriment of Plaintiff by collecting excess profits to which they have no right.

137. TCL's retention of profits is unjust because Plaintiff was deceived by false advertisements and did not receive the benefit of his bargain – a television with performing quantum dot technology.

138. TCL has unjustly retained profits and should be required to make Plaintiff whole.

## FIFTH CAUSE OF ACTION

## FRAUD

139. Plaintiff re-alleges and incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

140. The failure to disclose and/or concealment of material facts by TCL to Plaintiff and the Class Members, as set forth above, was known, or through reasonable care should have been known, by TCL to be false or misleading and material, and was intended to mislead Plaintiff and Class Members.

141. Plaintiff and Class Members were actually misled and deceived and were induced by Defendant to purchase the televisions which they would not otherwise have purchased or would have paid substantially less for.

142. As a result of TCL's conduct, Plaintiff and the Class Members have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

143. Plaintiff re-alleges and incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

144. TCL had a duty to provide honest and accurate information to its customers so that customers could make informed decisions on the substantial purchase of a television.

145. TCL failed to disclose and/or concealed material facts regarding the display technology of its TVs advertised as being QLED televisions.

146. TCL knew, or in the exercise of reasonable diligence, should have known, that the ordinary and reasonable consumer would be misled by TCL's misleading and deceptive advertisements and statements, which failed to disclose and/or concealed material facts concerning the TCL televisions that TCL knew or should have known would have misled an ordinary and reasonable consumer.

147. Plaintiff and the Class Members justifiably relied on TCL's

misrepresentations and have been damaged thereby in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief on behalf of himself and the Class against the Defendant:

1. Certification of this class action and appointment of Plaintiff and Plaintiff's counsel to represent the Class;

2. A declaratory judgment that Defendant violated California's Unfair Competition Law, Business and Professions Code, § 17200 *et seq*.;

3. A declaratory judgment that Defendant violated California's False Advertising Law, Business and Professions Code, § 17500 *et seq*.;

4. A declaratory judgment that Defendant violated California's Consumer Legal Remedies Act, California Civil Code, § 1750 *et seq*.;

5. That Defendant be permanently enjoined from engaging in the unlawful, unfair, and illegal acts and practices alleged herein;

6. For actual or statutory damages under California's CLRA, and other enhanced damages where available;

7. For an award of all monies owed under Plaintiff's claims of unjust enrichment;

8. For an award of all monies owed under Plaintiff's claims of fraud;

9. For an award of all monies owed under Plaintiff's claims for negligent misrepresentation;

10. For an award of punitive damages under the CLRA;

11. For reasonable attorneys' fees and costs, pursuant to California Code of Civil Procedure § 1021.5 and/or other applicable law;

12. Costs of suit herein;

13. For pre-judgment and post judgment interest; and

14. Such other and further relief as the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all the claims asserted in this Complaint so triable.[23]

Dated: June 13, 2024

Respectfully submitted,


/s/ Annick M. Persinger
Annick M. Persinger
**TYCKO & ZAVAREEI LLP**
Annick M. Persinger (CBN 272996)
10880 Wilshire Blvd.
Suite 1101
Los Angeles, CA 90024
P: 510-254-6808
F: 202-973-0950
apersinger@tzlegal.com

Andrea R. Gold (*pro hac vice*)
David A. McGee (*pro hac vice*)
2000 Pennsylvania Avenue, NW
Suite 1010
Washington, DC 20006
P: 202-973-0900
F: 202-973-0950
agold@tzlegal.com
dmcgee@tzlegal.com

*Attorneys for Plaintiff*


[23] A redlined copy of the amended complaint is attached as **Exhibit 3**.