ISABELLE L. ORD (SBN 198224)
*isabelle.ord@dlapiper.com*
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel: 415.836.2500
Fax: 415.836.2501

CHRISTOPHER M. YOUNG (SBN 163319)
*christopher.young@us.dlapiper.com*
ASHLEY L. BARTON (SBN 335673)
*ashley.barton@us.dlapiper.com*
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, CA 92121-2133
Tel: 619.699.2700
Fax: 619.699.2701

*Attorneys for Defendant*
***TTE Technology, Inc. d/b/a***
***TCL North America***

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Stephan Herrick, on Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> TTE TECHNOLOGY, INC. d/b/a TCL NORTH AMERICA, <br><br> Defendant. | Case No. 5:25-cv-00945-SB-SP <br><br> **NOTICE OF MOTION AND MOTION TO DISMISS OF DEFENDANT TTE TECHNOLOGY, INC., D/B/A TCL NORTH AMERICA; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Complaint Filed:  February 11, 2025 <br> FAC Filed: June 13, 2025 <br><br> Judge: Stanley Blumenfeld Jr. <br> Date: August 1, 2025 <br> Time: 8:30 a.m. <br> Crtrm: 6C |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on August 1, 2025 at 8:30 a.m., or as soon thereafter as the matter may be heard, before the Honorable Stanley Blumenfeld Jr., United States District Judge, Central District of California, located at the First Street Courthouse, 350 West 1st Street, Courtroom 6C, Los Angeles, California 90012, Defendant TTE TECHNOLOGY, INC. d/b/a TCL NORTH AMERICA ("TCL") will and hereby does move for an order dismissing, with prejudice, the First Amended Class Action Complaint ("FAC") filed by Plaintiff Stephen Herrick, and each claim for relief asserted therein.  TCL respectfully requests oral argument on this Motion.

TCL brings this motion under Fed. R. Civ. Proc. 12(b)(6), on the grounds that, despite amendment, Plaintiff's FAC still fails to state a claim:

(1) Plaintiff's equitable claims for violation of the California Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), Consumers Legal Remedies Act ("CLRA") (under which Plaintiff seeks declaratory relief), and unjust enrichment are barred because Plaintiff has an adequate remedy at law;

(2) The FAC fails to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement for Plaintiff's fraud and fraud-based claims;

(3) Plaintiff's UCL, FAL, and CLRA claims fail because they do not adequately allege that a reasonable consumer would be misled by TCL's statements;

(4) Plaintiff's UCL claim fails to allege any facts to support the allegation that TCL's actions were "unfair";

(5) Plaintiff's claim for punitive damages should be stricken because Plaintiff has not adequately pleaded fraud, oppression or malice; and

(6) Plaintiff's class claims should be stricken because they assert an impermissible fail-safe class.

//

1    This Motion is made following the conference of counsel pursuant to L.R. 7-3
2    which took place on June 20, 2025.

3

4    Dated: June 27, 2025          **DLA PIPER LLP (US)**

5                                  By: */s/*_____
6                                       CHRISTOPHER M. YOUNG
7                                       ISABELLE L. ORD
                                        ASHLEY L. BARTON
8                                       Attorneys for Defendant
9                                       TTE TECHNOLOGY, INC. D/B/A
                                        TCL NORTH AMERICA
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND FACTS ........................................................................4

     A.    TCL QLED TVs and Quantum Dot Technology................................4

     B.    The Biased Testing Underlying Plaintiff's Claims.............................4

     C.    Plaintiff's Unfounded Conclusions from Optical Testing .................5

     D.    Plaintiff Claims TCL Deceptively Markets its QLED TVs................6

     E.    Plaintiff's TCL QLED TV Purchase......................................................7

     F.    Plaintiff's Claims and Removal of this Action ...................................7

III.  LEGAL STANDARD ............................................................................8

IV.  ARGUMENT ........................................................................................8

     A.    Plaintiff's Equitable Claims Fail because Plaintiff Alleges an
Adequate Remedy at Law.....................................................................8

     B.    Plaintiff's FAC Fails to Satisfy Rule 9(b) because Plaintiff Has
Not Sufficiently Alleged He Was Misled. .........................................11

     C.    Plaintiff's UCL, FAL, and CLRA Claims Also Fail because
TCL's Marketing Is Not Likely to Mislead a Reasonable
Consumer. ...........................................................................................14

     D.    Plaintiff's UCL "Unfair" Claim Also Fails As Conclusory. .............18

     E.    Plaintiff Has Not Adequately Pleaded Punitive Damages.................19

     F.    The Class Claims Should Be Dismissed or Stricken. ........................21

V.   CONCLUSION .................................................................................22

NOTICE AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-00945

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Actimmune Mktg. Litig.*,
   2009 WL 3740648 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 F. App'x
   651 (9th Cir. 2011) ............................................................................................ 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................... 8, 18

*Bardin v. DaimlerChrysler Corp.*,
   136 Cal. App. 4th 1255 (2006) .......................................................................... 14

*Bookhamer v. Sunbeam Prods., Inc.*,
   913 F. Supp. 2d 809 (N.D. Cal. 2012) ............................................................. 20

*Boris v. Wal-Mart Stores, Inc.*,
   35 F. Supp. 3d 1163 (C.D. Cal. 2014) .................................................. 12, 18, 19

*Brazil v. Dell Inc.*,
   585 F. Supp. 2d 1158 (N.D. Cal. 2008) ........................................................... 21

*Clark v. Time Warner Cable*,
   2007 WL 9771354 (C.D. Cal. May 16, 2007) .................................................. 12

*Clevenger v. Welch Foods Inc.*,
   2022 WL 18228288 (C.D. Cal. Dec. 14, 2022) ................................................ 10

*Dennis v. Nike, Inc.*,
   2022 WL 18397390 ............................................................................................. 9

*Dinan v. SanDisk LLC*,
   2020 WL 364277 (N.D. Cal. Jan. 22, 2020) ..................................................... 16

*Drake v. Toyota Motor Corp.*,
   2021 WL 2024860 (C.D. Cal. May 17, 2021) (Blumenfeld, J.) ..............9, 10, 11

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) .......................................................................... 18

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ............................................................................. 14

*Figy v. FritoLay N. Am., Inc.*,
   67 F. Supp. 3d 1075 (N.D. Cal. 2014) .................................................. 16

*Fonseca v. Goya Foods Inc.*,
   2016 WL 4698942 (N.D. Cal. Sep. 8, 2016) ....................................... 10

*Found. v. Napolitano*,
   2018 WL 1947766 (N.D. Cal. Apr. 25, 2018) ..................................... 19

*Fraher v. Surydevara*,
   2009 WL 1371829 (E.D. Cal., May 15, 2009) ............................... 19, 20

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ................................................................ 14

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) ................................................................ 8

*In re Google Generative AI Copyright Litigation*,
   2025 WL 1159998 ............................................................................... 21

*Gordon v. City of Moreno Valley*,
   687 F. Supp. 2d 930 (C.D. Cal. 2009) .................................................. 8

*Gutierrez v. Kaiser Permanente*,
   2018 WL 2412319 (E.D. Cal. May 29, 2018) ..................................... 19

*Hairston v. S. Beach Bev. Co.*,
   2012 WL 1893818 (C.D. Cal. May 18, 2012) .......................... 13, 14, 16

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*,
   2019 WL 2515919 (N.D. Cal. June 18, 2019) ................................... 18

*Hill v. Roll Int'l Corp.*,
   195 Cal. App. 4th 1295 (2011) ........................................................... 14

*Hodges v. Apple, Inc.*,
   640 F. App'x 687 (9th Cir. 2016) ....................................................... 18

*Kamar v. RadioShack Corp.*,
   375 F. App'x 734 (9th Cir. 2010) ....................................................... 20

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ........................................ 8, 11, 12, 13, 14

*La Jolla Spa MD, Inc. v. Avidas Pharmaceuticals, LLC*,
  2017 WL 4870374 (S.D. Cal., Oct. 27, 2017)...............................................19

*McConnon v. The Kroger Co.*,
  2024 WL 3941340 (C.D. Cal. June 21, 2024)...........................................17

*McCracken v. KSF Acquisition Corp.*,
  2023 WL 5667869 (C.D. Cal. Apr. 4, 2023) (Blumenfeld, J.)......................9, 10

*Philips v. Ford Motor Co.*,
  726 F. App'x 608 (9th Cir. 2018)..........................................................9

*Punian v. Gillette Co.*,
  2016 WL 1029607 (N.D. Cal. Mar. 15, 2016)...........................................18

*Smith v. Allstate Ins. Co.*,
  160 F. Supp. 2d 1150 (S.D. Cal. 2001)...................................................15

*Smith v. LG Elecs. USA, Inc.*,
  2014 WL 989742 (N.D. Cal. Mar. 11, 2014).............................................19

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (2020)......................................................................9, 10

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003)......................................................8, 11, 12

*Victor v. R.C. Bigelow, Inc.*,
  2014 WL 1028881 (N.D. Cal. Mar. 14, 2014)...........................................15

**Statutes**

Cal. Civ. Code § 1750 *et seq.* ("CLRA") ........................................*passim*

Cal. Civ. Code § 3294.......................................................................20

Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") ...........................*passim*

Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL") ...........................*passim*

**Federal Rules of Civil Procedure**

Fed. R. Civ. P 9(b) .........................................................................*passim*

Fed. R. Civ. P. 12(b)(6) .................................................................4, 8

NOTICE AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-00945

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The First Amended Complaint ("FAC") filed by Plaintiff Stephan Herrick ("Plaintiff") in response to TCL's motion to dismiss his original Complaint does nothing to cure those pleading deficiencies, and now requires dismissal with prejudice. The FAC is founded on the same thin and conclusory allegations as the original Complaint – Plaintiff just added more of them.  In the FAC, Plaintiff posits that the QLED televisions manufactured by TCL must contain the elements cadmium and indium, in an arbitrary yet unstated amount, to be "QLED" televisions.  Plaintiff then claims (apparently based on nothing more than a few online news articles) that TCL's QLED televisions do not contain cadmium and indium, or at least not in the amount he deems sufficient.  On that manufactured basis, Plaintiff alleges that TCL deceived its customers into purchasing televisions marketed as QLED that are not in fact QLED.  (FAC ¶ 47[1].)  Plaintiff is wrong at every step. The FAC does <u>not</u> allege that TCL's QLED TVs fail to meet any specific or recognized QLED industry standard, and in fact, no such standard exists.  The FAC confirms that he cannot adequately plead his claims, and now his FAC should be dismissed with prejudice.

Plaintiff's lawsuit was apparently prompted by the publication of a few online news articles discussing testing on certain TCL QLED televisions that allegedly did not find the presence of cadmium or indium in three models (FAC ¶¶ 33, 37, fns 2, 3[2]), none of which were the model Plaintiff purchased (*id*. ¶ 65).  Plaintiff assumes that this means the TVs must not use QLED technology, but conveniently ignores the

---

[1] The FAC is Exhibit A to the Declaration of Ashley Barton ("Barton Decl.") filed with this Motion pursuant to Judge Blumenfeld's Standing Order.

[2] The footnotes in the FAC link two online news articles Plaintiff heavily relies on throughout the FAC, incorporating them by reference.  *See* Request for Judicial Notice ("RJN").  The articles are attached as Exhibits B and C to the Barton Decl.

remainder of the second article he cites, which reports <u>both</u> that TCL said the testing was inaccurate, and that certain other QLED television manufacturers use "cadmium-free" QLED technology.  (Barton Decl., Ex. C.)  Plaintiff also fails to allege any of the details of this testing, such as its reliability, detection threshold, or methodology. But, the article makes clear that the test was commissioned by a South Korean "biased chaebol" committed to ensuring Korean monopolies maintain their market share.  (Ex. B to Barton Decl.)  TCL's lower prices for high-quality televisions directly challenge that monopoly and have resulted in a campaign by Hansol Chemical and the Korean company it supplies. The FAC adds an additional citation to a second-hand report titled "Overblown quantum dot conspiracy theories make important points about QLED TVs" that comments on similar testing results commissioned by another South Korean competitor.  (FAC ¶ 38.)  In short, Plaintiff, apparently without conducting his own research, is piggy-backing on a factually incorrect smear campaign to attack TCL, because TCL is trying to provide greater access to high-quality televisions at a lower price.

Plaintiff also does not refer to any recognized industry standard or trade journal that might show how a reasonable consumer understands the term "QLED," or how he was allegedly misled because he believed his TCL QLED TV would "provide[] better picture quality, including more vivid colors, than a standard LED television." (FAC ¶¶ 67.)  Indeed, Plaintiff does not even allege that his TCL QLED television did not perform as represented, or what he actually understood "QLED" to mean. Plaintiff, therefore, has not alleged he was misled into believing the arbitrary definition or requirement his FAC assigns to "QLED," and fails to state a claim for fraud or misrepresentation.

Plaintiff also cannot meet the "reasonable consumer" standard under California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) ("UCL"), False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*)  ("FAL"),

and Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*) ("CLRA") – claims that require the probability that a significant portion of the general consuming public acting reasonably could actually be misled. A consumer must have an "expectation or an assumption" based on TCL's statement that its televisions are "QLED" for liability to attach, and it would be highly implausible to allege that reasonable consumers believe "QLED" to mean their televisions must necessarily contain indium or cadmium, or contain it in a specific amount.

Plaintiff's FAC should be dismissed on the following grounds:

<u>First</u>, Plaintiff's equitable claims for violation of the UCL, FAL, and CLRA, and for unjust enrichment, fail because Plaintiff has an adequate remedy at law under identical legal claims for fraud and negligent misrepresentation.

<u>Second</u>, Plaintiff's fraud and fraud-based claims fail to meet Rule 9(b)'s heightened pleading requirement because Plaintiff has not specifically alleged *how* he was misled.

<u>Third</u>, Plaintiff alleges no actual facts indicating that reasonable consumers understood, or had expectations about, technical concepts like "QLED" technologies. Without these foundational facts, Plaintiff fails to plead that a reasonable consumer would likely be misled, as required to support his UCL, FAL, and CLRA claims.

<u>Fourth</u>, Plaintiff's UCL claim fails to allege any facts to support the allegation that TCL's actions were "unfair," as he fails to allege how any of TCL's statements violate an established public policy or harm competition;

<u>Fifth,</u> Plaintiff fails to allege any facts supporting punitive damages because Plaintiff has not adequately pleaded fraud, oppression, or malice.

<u>Finally</u>, Plaintiff's class claims present an impermissible fail-safe class, which can be dismissed at the pleading stage.

For each and all of these reasons, TCL respectfully requests that its Motion be granted, and the FAC should be dismissed with prejudice.

3

## II.    BACKGROUND FACTS[3]

### A.    TCL QLED TVs and Quantum Dot Technology

TCL is "one of the leading sellers of TVs in the United States and is now the fastest growing TV brand in North America." (FAC ¶ 13.)  TCL provides high-quality TVs at competitive prices through retailers like Amazon, BestBuy, and Walmart.  (*Id.* ¶ 12.)  Quantum dot technology is a recent innovation in LED television technology. (*Id.* ¶ 23.)  Quantum dots are nanoparticles which "absorb" the "light from LEDs" (light-emitting diodes) "to improve the capabilities of the LCD [liquid-crystal display] and allow it to reveal a wider and more saturated range of colors compared to a standard LED television." (*Id.* ¶¶ 18, 27.)  Televisions incorporating quantum dot technology are known as QLED or Quantum Dot televisions.  (*Id.* ¶ 29.)  TCL "introduced the world's first big-screen QLED TV in 2014, pioneering quantum dot color technology." (*Id.* ¶ 49.)

### B.    The Biased Testing Underlying Plaintiff's Claims

Plaintiff claims that "it can be verified . . . whether QLED technology . . . is present" or "is present in sufficient amounts as to provide the advertised benefits and improvement in performance," but cites no established industry standard that speaks to that "amount" or to the level of expected benefits and performance of QLED televisions.  (FAC ¶ 31).  Instead, Plaintiff cites two articles that purport to report on testing of various unidentified TCL QLED television models.  (Barton Decl., Exs. B, C.)  Plaintiff does not incorporate or attach the actual testing results, and does not allege anything about the methods used or any scientific standard applied to ensure the accuracy or reliability of the results.  (*See* FAC ¶¶ 33-37.)  Reportedly, the tests were searching for the presence of indium and cadmium that were presupposed as "essential elements" of quantum dots, which are "*nano*-sized crystals." (Barton Decl.,

_____

[3] TCL denies the factual allegations in the FAC but recognizes that the Court must assume them to be true for a Rule 12(b)(6) motion.

NOTICE AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-00945

Ex. C.)  However, "[t]he tests' detection thresholds required at least 2 milligrams of indium or 0.5 mg of cadmium per kilogram" for these elements to be detected (*id*.)—two million times and half a million times the mass of a *nano*gram, respectively (Ex. D to Barton Decl.[4]).  The tests allegedly did not find the presence of cadmium or indium with these detection levels in three models of TCL's QLED televisions - none of which are the model Plaintiff purchased.  (FAC ¶¶ 35, 37, 65, fn 3.)

One of the articles cited by Plaintiff reports that the testing was commissioned by the South Korean chaebol, Hansol Chemical, described as a "biased" competitor committed to maintaining a monopoly for South Korean businesses—a commitment that TCL's expansion threatens.  (Barton Decl., Ex. B.)  The Korea Times reported that it was Hansol Chemical who presupposed that "genuine" QLED requires indium or cadmium, but does not provide the basis for this claim and would not "reveal[] further details."  (Barton Decl., Ex. C.)

The FAC cites an additional article that comments on similar testing commissioned by another South Korean competitor, which purportedly did not find cadmium or indium when using the same arbitrary detection threshold as the first tests.  (FAC ¶ 38.)  Once again, Plaintiff does not attach or cite the actual testing results, does not allege any scientific standard was applied to ensure the accuracy or reliability of the results, and does not explain or cite any authority that suggests these tests can establish TCL's televisions do not actually contain quantum dots.  (*See id*.)

## C.    **Plaintiff's Unfounded Conclusions from Optical Testing**

Plaintiff's FAC adds a new purported claim that optical testing of TCL's Q651G TV from Rtngs.com "supports the  conclusion  that TCL's televisions . . . do

---

[4] Exhibit D is a webpage published by the National Institute of Standards and Technology showing "Metric (SI) Prefixes" for units of measurement.  It shows that a nanogram is one-billionth of a gram, and a milligram is one-thousandth of a gram—a milligram has one million times the mass as a nanogram.  *See* RJN.

not contain QLED or QD technology." (FAC ¶¶ 40-41.) Rtings.com "tests the
panel technology in the televisions it reviews and produces spectral power
distribution graphs" to "capture the intensity of light across all visible wavelengths."
(*Id.* ¶¶ 40-41.) Plaintiff concludes that "Rtings.com identified that the TCL
Q651G uses a 'KSF phosphor coating' to produce red light, not quantum dots," but
nothing on Rtngs.com suggests that the KSF phosphor coating and quantum dot
technology are mutually exclusive, and Rtings.com makes no suggestion that TCL's
TV does not contain quantum dots or QLED technology. (*See id.* ¶¶ 40-41, fn 7.)

Plaintiff's FAC displays the optical testing results of the Sony Bravia 9
QLED television (which enters the market at a much higher price point) to conclude
that, in "contrast" to the results from testing TCL's Q651G TV, the Bravia results
"are consistent with a television utilizing QLED or QD technology." (FAC ¶¶ 43-
45.) Again, Plaintiff cites no authority or market standard that requires a QLED TV
to mimic the testing results of the Sony Bravia, and Rtngs.com draws no conclusion
that the results must match for a TV to qualify as "QLED." (*See id.*)

### D.    Plaintiff Claims TCL Deceptively Markets its QLED TVs.

Plaintiff claims that TCL's QLED TVs do not actually contain QLED
technology, "or the QLED technology that is present does not meaningfully contribute
to the television's performance or display technology." (FAC ¶ 57.) Plaintiff blindly
relies on reports from "various news services" describing test results commissioned
by Hansol Chemical, a foreign manufacturer of materials used in television
technology, that supposedly showed three models of TCL's QLED televisions "did
not contain any traces of indium or cadmium" (*id.* ¶¶ 33, 37), and describing similar
testing results commissioned by a competitor manufacturer applying the same
detection threshold (*id.* ¶¶ 38). Plaintiff alleges that "quantum dot technology cannot
be implemented . . . without the existence of indium and cadmium materials." (*Id.* ¶
47.) But the news articles Plaintiff cites reports that other TV manufacturers do, in

NOTICE AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-00945

fact, use "cadmium-free" QLED technology.    (Barton Decl., Exs. B, C.) Nevertheless, Plaintiff claims that TCL's marketing of certain televisions as "QLED" is "untrue and misleading" since this testing allegedly found that the TVs do not contain cadmium or indium.  (FAC ¶¶ 30, 37, 38, 56.)  Plaintiff also alleges that TCL's televisions contain phosphor-based technology but does not explain why quantum dots cannot also be present.  (*Id*. ¶¶ 41-45.)

### E.    Plaintiff's TCL QLED TV Purchase

Plaintiff Stephen Herrick purchased his TCL QLED 55Q651G TV from Amazon on July 17, 2024 for $329.24.  (FAC ¶ 65.)  Plaintiff allegedly viewed "QLED" representations and "purchased this TCL QLED TV in part because it was supposedly a QLED television, which is supposed to provide a higher picture quality than an LED television."  (*Id*. ¶¶ 65, 66.)  Specifically, Plaintiff claims that before his purchase he "reviewed the advertising on Amazon, which stated that a TCL 55Q651G TV was in fact a QLED television." (*Id.* ¶ 66.)  Plaintiff also alleges that he researched the TV, including viewing TCL's website, and TCL's QLED 55Q651G TV product page and "Spec Sheet," and read various third-party reviews.  (*Id*. ¶¶ 64, 66, fn 21[5].) Notably, Plaintiff does not allege when or how he allegedly discovered that his TCL TV was not actually QLED, that it did not contain sufficient amounts of cadmium or indium, or that he was disappointed in the quality of the television prior to the articles referenced in his FAC.

### F.    Plaintiff's Claims and Removal of this Action

Plaintiff filed his putative class action Complaint in superior court on February 11, 2025, asserting claims for false advertising under the UCL, FAL and CLRA, unjust enrichment, and for fraud and negligent misrepresentation because his TCL TV is either not a QLED TV or does not contain enough quantum dots.  TCL removed

_____

[5] TCL's QLED 55Q651G TV online product page that discloses the product's technical "Specifications" is attached as Exhibit E to the Barton Declaration. *See* RJN.

this action to this Court on April 17, 2025. (Notice of Removal, ECF No. 1). After TCL filed a motion to dismiss the Complaint (ECF No. 31), Plaintiff filed his FAC (ECF No. 34). The FAC does not cure the pleading deficiencies of the Complaint.

## III.    LEGAL STANDARD

Under Rule 12(b)(6), a complaint should be dismissed if it does not "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court may discount "any allegations therein that amount to little more than 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Gordon v. City of Moreno Valley*, 687 F. Supp. 2d 930, 943 (C.D. Cal. 2009) (*quoting Iqbal*, 556 U.S. at 678).

Rule 9(b) requires a plaintiff to plead with particularity the circumstances allegedly constituting fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). To satisfy this requirement, the plaintiff must do more than plead the neutral facts of a transaction; he must also explain how the statement at issue was false or misleading. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (superseded by statute on other grounds). The purpose of Rule 9(b) is to provide defendants with adequate notice, to protect defendants' reputations, and to prohibit plaintiffs from imposing "enormous social and economic costs absent some factual basis." *Kearns*, 567 F.3d at 1125. Where, as here, "the entire complaint against a particular defendant alleges a unified course of fraudulent conduct, it is 'grounded in fraud,' and Rule 9(b) applies to the whole of that complaint." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003).

## IV.    ARGUMENT

### A.    Plaintiff's Equitable Claims Fail because Plaintiff Alleges an Adequate Remedy at Law.

Plaintiff's equitable claims under the UCL, FAL, and CLRA, and for unjust enrichment must be dismissed because Plaintiff alleges that he has an adequate

remedy at law in the form of money damages through his fraud and negligent misrepresentation claims.  (*See* FAC ¶¶ 142, 147.)

Ninth Circuit precedent dictates that "[r]egardless of whether California authorizes its courts to award equitable restitution under the UCL and CLRA when a plain, adequate, and complete remedy exists at law, . . . federal courts rely on federal equitable principles before allowing equitable restitution in such circumstances." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (2020) (affirming dismissal of plaintiff's equitable claims because "she fail[ed] to demonstrate that she lack[ed] an adequate legal remedy.")  A plaintiff cannot proceed with equitable claims past the pleading stage where: (1) "the operative complaint does not allege that [plaintiff] lacks an adequate legal remedy"; or (2) the plaintiff alleges legal claims for money damages that mirror any available equitable restitution.  *Id.*, at *844-45; *accord Philips v. Ford Motor Co.*, 726 F. App'x 608, 609 (9th Cir. 2018).

This Court has consistently followed *Sonner* in dismissing UCL, FAL, unjust enrichment claims, and claims for equitable relief under the CLRA at the pleading stage where, as here, the operative complaint demonstrates an adequate remedy at law.  *See Drake v. Toyota Motor Corp.,* 2021 WL 2024860, at *7 (C.D. Cal. May 17, 2021) (Blumenfeld, J.) (dismissing UCL, CLRA, and unjust enrichment claims with prejudice because "[a]t bottom, like *Sonner*, Plaintiffs fail to include any substantive allegations that they lack an adequate legal remedy."); *Dennis v. Nike, Inc.*, 2022 WL 18397390, at *fn. 4 (C.D. Cal. Nov. 18, 2022) (Blumenfeld, J.) (dismissing UCL claim because Plaintiff "has not shown why the legal remedies he has sought are inadequate.")  The FAC's added conclusory allegations that Plaintiff's "legal claims for damages are not equally certain" (FAC ¶ 70) does not change the fact that he has alleged an adequate legal remedy.  *McCracken v. KSF Acquisition Corp.*, 2023 WL 5667869, at *8 (C.D. Cal. Apr. 4, 2023) (Blumenfeld, J.) (dismissing equitable claims under UCL, FAL, and CLRA when "Plaintiff's conclusory allegations about her

uncertainty as to the damages that will be available do not 'establish that she lacks an adequate remedy at law'"). As in *McCracken*, Plaintiff has not identified "any possible—much less plausible—scenario in which [he] would prevail on [his] claims and be entitled to restitution or disgorgement but would not be entitled to damages." *Id*. Further, even if "damages and restitution are not the same amount" (FAC ¶ 70), "an adequate legal remedy need not be an identical legal remedy." *McCracken,* 2023 WL 5667869, at *8. "It would be anomalous for [*Sonner's*] rule to be avoidable merely because of the reality that claims for restitution and damages often will result in different recoveries." *Id*. This Court has also found "the district court decisions suggesting that such dismissal [at the motion to dismiss stage] is inconsistent with the federal rules are no longer persuasive" after "the Ninth Circuit's published decision in *Sonner*." *Id.*

Plaintiff's UCL, FAL, and unjust enrichment claims are all "equitable in nature," and must be dismissed under *Sonner* and its progeny. *Drake*, 2021 WL 2024860, at *6. Similarly, Plaintiff's claim for declaratory relief under the CLRA claim must be dismissed. (FAC, Prayer ¶ 4.) All of Plaintiff's claims "fail to include any substantive allegations that they lack an adequate legal remedy." *Drake,* 2021 WL 2024860, at *7. Further, Plaintiff's equitable claims are all predicated on the same alleged misrepresentation that TCL's QLED advertising statements were willfully misleading and allegedly caused consumers to purchase televisions labeled as QLED at a higher price than non-QLED televisions. (FAC ¶¶ 91, 95 [UCL], 105, 107 [FAL], 116, 123 [CLRA], 133, 135 [Unjust Enrichment]). This Court has dismissed such claims when "Plaintiff's claims all are based on the same allegedly misleading advertising and allege the same harm." *McCracken*, 2023 WL 5667869, at *8; *see also Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, at *8 (N.D. Cal. Sep. 8, 2016) (same). Thus, dismissal at this stage is proper.

Plaintiff cannot prevent dismissal by pleading in the alternative. "Because Plaintiff has not established the unavailability of an adequate remedy at law (even in the alternative) [] claims for equitable restitution must be dismissed." *McCracken*, 2023 WL 5667869, at *8; *Clevenger v. Welch Foods Inc.*, 2022 WL 18228288, at *4 (C.D. Cal. Dec. 14, 2022). Thus, amendment would be futile, because "it is unclear how damages would not be sufficient to render relief sought by the [equitable] claim[s] unnecessary." *Drake,* 2021 WL 2024860, at *7. For these reasons, the Court should now dismiss Plaintiff's first through fourth causes of action *without leave to amend.*

## B.    Plaintiff's FAC Fails to Satisfy Rule 9(b) because Plaintiff Has Not Sufficiently Alleged He Was Misled.

The entire FAC should be dismissed because none of Plaintiffs' claims meet Rule 9(b)'s heightened pleading standard required for fraud and fraud-based claims. Plaintiff's CLRA, UCL, FAL, negligent misrepresentation, and unjust enrichment claims are all grounded in the same alleged misrepresentations or omissions as Plaintiff alleges under his fraud claims, requiring Plaintiff to meet Rule 9(b)'s heightened pleading standard for all six claims. Plaintiff's claims allege that TCL disseminated false and misleading statements with the intention to deceive consumers into purchasing TCL televisions. (FAC ¶¶ 91, 95, 105, 107, 127, 133, 135, 145-46). Each of these allegations are predicated on TCL's allegedly fraudulent misrepresentation of its QLED technology. (*Id.*) However, Plaintiff still fails to allege he was misled into believing the arbitrary definition the FAC assigns to "QLED." Thus, none of Plaintiff's claims meet the pleading standard.

"Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud . . . ." *Kearns*, 567 F. 3d at 1124. Where, as here, "the entire complaint against a particular defendant alleges a unified course of fraudulent conduct, it is 'grounded in fraud,' and Rule 9(b) applies to the whole of that

1    complaint." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d at 1108; *see also Kearns*, 567

2    F.3d at 1125 (holding that Rule 9(b) applies to claims under California's consumer

3    protection statutes when such claims are "grounded in fraud").

4    　　　Further, "averments of fraud must be accompanied by 'the who, what, when,

5    where, and how' of the misconduct charged.'" *Boris v. Wal-Mart Stores, Inc.*, 35 F.

6    Supp. 3d 1163, 1174 (C.D. Cal. 2014). Under his fraud claim, Plaintiff uses only four

7    short sentences to recite the elements of fraud, and states: "The failure to disclose

8    and/or concealment of material facts by TCL to Plaintiff and the Class Members, as

9    set forth above, . . . was intended to mislead Plaintiff and Class Members." (FAC ¶

10   140.) Likewise, Plaintiff alleges under his negligent misrepresentation claim that

11   TCL "failed to disclose and/or concealed material facts regarding the display

12   technology of its TVs as being QLED televisions" that TCL "knew" or "should have

13   known would have misled an ordinary and reasonable consumer." (*Id.* ¶¶ 145-56.)

14   　　　While Plaintiff's fraud and misrepresentation claim incorporate the preceding

15   allegations in the FAC, nowhere does Plaintiff allege with any detail *what* statements

16   allegedly misled him, or *how* he personally was misled. Although Plaintiff generally

17   alleges that before he purchased his TCL television, he "reviewed the advertising on

18   Amazon, which stated that a TCL 55Q651G TV was in fact a QLED television," and

19   viewed a statement on TCL's website indicating "it was a QLED television and the

20   television was 'QLED Pro – Quantum Dot Technology Rich, vibrant colors covering

21   nearly the entire DCI-P3 color space bring images to life'" (FAC ¶ 66), he never

22   alleges that he relied upon these statements, or explain *how* he relied upon them.

23   Failure to allege these facts warrants dismissal. *See Clark v. Time Warner Cable*,

24   2007 WL 9771354, at *4 (C.D. Cal. May 16, 2007) (dismissing cause of action for

25   fraud after Plaintiff alleged "that defendant made 'material representations' (without

26   indicating any specific representations) and that Plaintiff had 'misplaced reliance'

27   (without indicating what type of reliance allegedly took place)").

28

Plaintiff's only explanation as to **how** he may have relied on a statement—that his television was "QLED"—is that "he intended to purchase a QLED television because [he] understood that a QLED TV ostensibly provided better picture quality, including more vivid colors, than a standard LED television." (FAC ¶ 67.) However, Plaintiff fails to allege that the TCL television he purchased did not live up to this expectation, or did not provide a "better picture quality, including more vivid colors" than its LED counterpart. (*See id.* ¶ 61-69.) Although the FAC makes conclusory allegations about the technological requirements and chemical composition comprising "QLED" (*id.* ¶¶ 30-32, 37, 41, 42, 47), Plaintiff does not allege that he understood "QLED" to mean that his television would contain "quantum dot technology" or, more specifically, that it contained any specific amount of "indium and cadmium materials" or that it lacked any phosphor-based technology (*id.* ¶¶ 30-32, 41-42). Therefore, Plaintiff fails to allege that he was misled into believing this arbitrary definition that the FAC assigns to "QLED."

Plaintiff's fraud and misrepresentation claims are premised on a "failure to disclose and/or concealment of material facts" instead of an affirmative representation. (FAC ¶¶ 140, 145-46.) "Because the Supreme Court of California has held that nondisclosure is a claim for misrepresentation in a cause of action for fraud, it (as any other fraud claim) must be pleaded with particularity under Rule 9(b)." *Kearns*, 567 F.3d at 1127. However, Plaintiff also fails to allege—with any level of specificity—what facts TCL "concealed" or how they were material to his purchase. At best (and if news articles reporting on specious testing are to be believed), the FAC alleges that TCL did not disclose that its QLED television were not made with cadmium or indium and that it uses phosphor-based technology to enhance red light, but Plaintiff fails to allege how those facts were material to his purchasing decision or even that he was aware of potential cadmium, indium, or phosphor content in QLED televisions prior to his purchase. *See Hairston v. S. Beach*

13

*Bev. Co.*, 2012 WL 1893818, at *6 (C.D. Cal. May 18, 2012) ("A court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations."). As with Plaintiff's other claims, Plaintiff does not allege that he believed that "QLED" would mean that the TCL's QLED technology would necessarily contain cadmium and indium, or that it would not contain phosphor. Plaintiff's non-disclosure claims are instead "couched in general pleadings alleging [TCL's] intent to conceal from customers" material facts, and must likewise be dismissed. *Kearns*, 567 F.3d at 1127. (*See* FAC ¶¶ 122, 140, 145.)

## C.     Plaintiff's UCL, FAL, and CLRA Claims Also Fail because TCL's Marketing Is Not Likely to Mislead a Reasonable Consumer.

The "reasonable consumer" standard governs Plaintiff's claims under the UCL, FAL, and CLRA. *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011); *see also Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). To meet this standard, there must be "more than a mere possibility that [a] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public . . . , acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). The "reasonable consumer" is not the "least sophisticated" or "unwary" consumer. *Hill*, 195 Cal. App. 4th at 1304. A plaintiff's contention that he was personally deceived is insufficient to allege that a reasonable consumer is likely to be deceived. *Id*. "Thus, where a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." *Hairston v. S. Beach Beverage Co.*, 2012 WL 1893818, at *4.

This action rests on the reasonable consumer's alleged understanding of "QLED" and the underlying technology. (*See* FAC ¶ 106.) Plaintiff has not identified

---

14

NOTICE AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 5:25-CV-00945

1  any generally accepted definition or industry standard for what it means for a

2  television to be QLED.  Plaintiff must plausibly allege that reasonable consumers had

3  an expectation of specific performance of QLED TVs based on TCL's statements,

4  that a significant portion of the general consuming public shared Plaintiff's

5  understanding, and that the statements were actually false or misleading.  *Bardin v.*

6  *DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006) ("members of the public

7  must have had an expectation or an assumption" about the matter in question for

8  liability to attach).

9        Far from plausibly alleging that reasonable consumers were actually deceived,

10  Plaintiff's FAC does not even explain how reasonable consumers interpret QLED or

11  the full technical specifications, or why the interpretation the FAC suggests is

12  reasonable.  Plaintiff also alleges that "TCL makes additional misleading and false

13  statements in specification sheets – 'Spec Sheets' on their website" and quotes the

14  following Display specifications: "Panel Refresh Rate 60Hz, Panel Resolution 4K

15  Ultra HD (3840 x 2160), Display Colors 1.07 billion, High Dynamic Range Format

16  HDR PRO+ (Dolby Vision, HDR10+, HDR10, HLG)."  (FAC ¶ 54; *see also* Ex. E to

17  Barton Decl.)  Plaintiff does not explain how these specifications are allegedly false.

18  (*See id*. ¶ 55.)  But Rule 9(b) requires Plaintiff to plausibly allege these facts.  *E.g.,*

19  *Victor v. R.C. Bigelow, Inc.*, 2014 WL 1028881, at *17 (N.D. Cal. Mar. 14, 2014)

20  (dismissing UCL claim in part because plaintiff "does not plead what expectations a

21  reasonable consumer might have from seeing or hearing that statement such that they

22  were fraudulently misled by what Bigelow actually offered"); *Smith v. Allstate Ins.*

23  *Co.*, 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) ("plaintiff must plead facts

24  explaining why the statement was false when it was made").

25        While Plaintiff claims in passing that consumers may expect a QLED television

26  to "provide a higher picture quality than an LED television," Plaintiff fails to allege

27  that TCL's QLED televisions do not provide higher picture quality or a wider and

28

---

15

more saturated range of colors compared to their LED counterparts.  (FAC ¶ 65.)
Plaintiff ignores TCL's QLED product specifications—that disclose the objective
measurements of performance capabilities—and proprietary technologies.

The thin string that ties Plaintiff's case together is the theory that "[q]uantum
dot technology cannot be implemented or believed to be implemented without the
existence of indium and cadmium materials." (FAC ¶ 47.)  Plaintiff does not actually
allege—and could not plausibly allege—that a reasonable consumer would have
expected a QLED television containing quantum dot technology to necessarily
contain a specific amount of indium or cadmium or even to contain them at all. *See
Dinan v. SanDisk LLC*, 2020 WL 364277, at *8 (N.D. Cal. Jan. 22, 2020) (granting
motion to dismiss and finding allegation "that a reasonable consumer understands
measurements of storage capacity and file size to be consistent with the binary
system" to be of "questionable plausibility.").  Further, Plaintiff's only basis for its
allegation that TCL "QLED" televisions do not contain these elements are news
articles secondarily reporting on a foreign study commissioned by a Korean "biased
chaebol" who is a significant competitor of TCL (*id.* ¶ 37, fn. 2; Barton Decl., Ex. A),
and another news article that claims to report on "overblown quantum dot conspiracy
theories" and discusses a second test that mirrors the first and that was also reportedly
commissioned by a Korean competitor (*id.* ¶ 38, fn 4).  The Court does not need to
accept Plaintiff's unsupported conclusion from a biased source as true. *See Hairston
v. S. Beach Bev. Co.,* 2012 WL 1893818, at *6 ("A court need not accept as true
unreasonable inferences, unwarranted deductions of fact, or conclusory legal
allegations cast in the form of factual allegations.").  Indeed, Plaintiff's FAC cites an
article reporting that there are "cadmium-free" QLED televisions on the market.
(FAC ¶ 37, fn. 2; Barton Decl., Ex. B.)

Plaintiff selectively cites to articles reporting on biased tests based on the
assumption that cadmium and indium are required for "QLED," and fails to cite any

16

industry standard for QLED technology or even that indium and cadmium must be present at all in QLED technology.  *See Figy v. FritoLay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1090 (N.D. Cal. 2014) (dismissing false advertising claim where plaintiff "provide[d] no detail whatsoever about how or why the offending ingredients [were] unnatural").  The way Plaintiff wordsmiths the allegations about the phosphor technology reportedly included in TCL's televisions is also telling.  Plaintiff indicates that "Rtings.com identified that that the TCL Q651G uses a 'KSF phosphor coating' to produce red light, not quantum dots" (FAC ¶¶ 40-41, fn 4), but Rtngs.com does *not* state or even suggest that a QLED television cannot also contain KSF phosphor coating.  Further, Rtings.com makes no suggestion that TCL's television does not contain quantum dots or QLED technology.  Plaintiff also compares the optical testing results of TCL's 65Q651G TV and of Sony's Bravia 9 QLED (starting at $2,999.99 compared to the $329.24 Plaintiff paid for his TV) to conclude that TCL's televisions "did not contain quantum dot technology."  (*Id*. ¶¶ 46.)  Plaintiff cites no authority or market standard that requires TCL's QLED TV to have optical test results comparable to another manufacturer's QLED TV that is nearly ten times the price to qualify as a QLED television.  (*See id*. ¶¶ 40-45.)

Plaintiff has certainly failed to define by any objective measure what is necessary for a television to be considered "QLED."  Plaintiff claims that "[a]ny television that fails to include quantum dot technology (or includes only a *negligible amount of the technology* such that it fails to provide a meaningful improvement in performance or display technology) is not a QLED or QD television."  (*Id*. ¶ 30. (emphasis added)).  But Plaintiff never says what "amount" of the technology is "sufficient" to provide these benefits, and entirely discounts or ignores TCL's proprietary QLED technology.  *McConnon v. The Kroger Co.*, 2024 WL 3941340, at *4 (C.D. Cal. June 21, 2024) (dismissing UCL, FAL, and CLRA claims for failure to sufficiently allege how a label was allegedly misleading).

To avoid dismissal, Plaintiff must also plead facts showing that his expectations were reasonable under the circumstances.  That is why courts often dismiss claims on the pleadings where, as here, the subjective "expectations" Plaintiff attributes to a reasonable consumer about a product (that he has not alleged he shares) have no factual basis, such that a substantial portion of the public is not likely to have been reasonably deceived.  *E.g., Hodges v. Apple, Inc.,* 640 F. App'x 687, 689 (9th Cir. 2016) ("The name MacBook Pro with Retina display promises only that the computer will have characteristics specified by those words: it says nothing regarding the overall quality of the line or the comparative quality of each unit."); *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, 2019 WL 2515919, at *3 (N.D. Cal. June 18, 2019) ("Plaintiff has failed to meet this standard—that a reasonable consumer would understand 'natural' to have the definition attributed to it by Plaintiff.").  Without pleading any objective standard for QLED or how reasonable consumers knew of or expected the presence of indium or cadmium in a QLED television, or the absence of phosphor-based technology, the FAC fails to plead a misrepresentation under *Iqbal* or Rule 9(b).

**D.**    **Plaintiff's UCL "Unfair" Claim Also Fails As Conclusory.**

Plaintiff's claim under the "unfairness" prong overlaps entirely with those under the fraud prong, and cannot survive if the claims under the other prongs do not survive.  *Punian v. Gillette Co.*, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016); *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *14 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 F. App'x 651 (9th Cir. 2011).

Plaintiff has not explained why the alleged conduct is unfair.  For claims brought under the UCL's "unfair" prong, the Central District applies *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010), in which "the Court persuasively adapted *Cel-Tech* [a UCL case against a competitor] to consumer unfairness suits."  *Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d at 1171.  "As such, for unfairness cases

18

predicated on public policy," the Central District has found that "*Cel-Tech* requires that the public policy which is a predicate to the action must be tethered to specific constitutional, statutory or regulatory provisions.  Alternatively, to show a business practice is unfair, the plaintiff must show the conduct threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws . . . or otherwise significantly threatens or harms competition."  *Boris*, 35 F. Supp. 3d at 1171 (dismissing UCL claim under "unfair" prong when Plaintiffs did not "point" to "any specific constitutional, statutory, or regulatory provision that embodies a policy that [Defendant's] [product] packaging violate[d]").

But Plaintiff merely recites the legal elements of his claims and laments that TCL's practices "offend established policy" and "harm" competition.  (FAC ¶ 94.) That is not enough.  Plaintiff has not identified any constitutional, statutory, or regulatory provision, or otherwise explained how any of TCL's statements violate an established public policy or harm competition.  Such conclusory pleading does not put TCL on fair notice of Plaintiff's claims under Rule 9(b).  *See Smith v. LG Elecs. USA, Inc.*, 2014 WL 989742, at *10 (N.D. Cal. Mar. 11, 2014) (holding that UCL unfairness allegations failed because plaintiffs alleged only that defendants' conduct was "immoral, unethical, oppressive and unscrupulous" with no factual support aside from facts that failed to state other claims).  Accordingly, Plaintiff's UCL unfairness claim must be dismissed.

### E.    Plaintiff Has Not Adequately Pleaded Punitive Damages.

State law provides the substantive law for punitive damages, while the Federal Rules of Civil Procedure govern the adequacy of the pleadings.  *La Jolla Spa MD, Inc. v. Avidas Pharmaceuticals, LLC*, 2017 WL 4870374, at *7 (S.D. Cal., Oct. 27, 2017).  Federal courts require specific facts sufficient to support a punitive damages claim.  *See e.g., Young Am.'s Found. v. Napolitano*, 2018 WL 1947766, at *12 (N.D. Cal. Apr. 25, 2018) (dismissing a punitive damages claim for lack of factual support);

*Gutierrez v. Kaiser Permanente*, 2018 WL 2412319, at *5 (E.D. Cal. May 29, 2018)
(holding that a complaint seeking punitive damages under California law "must
identify actual facts, as opposed to conclusory allegations showing that the defendant
acted [with oppression, fraud or malice]"). Plaintiff fails to do so here.

Plaintiff seeks punitive damages only under his CLRA claim. (FAC ¶ 129,
Prayer ¶ 10.) "Under California law, punitive damages are available to a plaintiff
who proves by clear and convincing evidence that the defendant is guilty of
oppression, fraud, or malice." *Fraher v. Surydevara*, 2009 WL 1371829, at *1 (E.D.
Cal., May 15, 2009). However, Plaintiff failed to adequately plead his CLRA claim
sounding in fraud (*see* discussion *supra* IV.B), and oppression and malice are never
mentioned in the FAC. Further, under the statute permitting recovery of punitive
damages, "'[f]raud' means an intentional misrepresentation, deceit, or concealment
of a material fact known to the defendant with the intention on the part of the
defendant of thereby depriving a person of property or legal rights or otherwise
causing injury." Cal. Civ. Code § 3294; *Bookhamer v. Sunbeam Prods., Inc.*, 913 F.
Supp. 2d 809, 820 (N.D. Cal. 2012). Plaintiff pleads under his CLRA claim that TCL
"actively concealed and failed to disclose [] the fact that its televisions advertised as
having QLED technology had a QLED Deficiency" (FAC ¶ 121), but fails to identify
"facts" with any specificity or consistency that TCL allegedly concealed or how those
facts were material. (*Compare* FAC ¶ 2 ("This action arises from TCL's concealment
of the technical specifications and display performance of its QLED televisions") and
¶ 145 ("TCL failed to disclose and/or concealed material facts regarding the display
technology of its TVs advertised as being QLED televisions.").) Plaintiff pleads only
boilerplate language implying that TCL "knew or should have known that the
televisions' technology was misrepresented" (FAC ¶ 120) and the advertising
statements regarding quantum dot technology were likely to deceive consumers
without any facts whatsoever to indicate that TCL had any "intention" to "depriv[e]

1    [Plaintiff] of property or legal rights or otherwise caus[e] injury." (*See* FAC ¶¶ 59,

2    120, 140, 146). "[B]are assertion of conduct described merely as intentional is

3    insufficient to support a request for punitive damages." *Fraher*, 2009 WL 1371829,

4    at *1. Plaintiff cannot adequately plead fraud under this standard, or any facts

5    supporting punitive damages, so this claim fails.

6              **F.    The Class Claims Should Be Dismissed or Stricken.**

7              The Court should dismiss (or strike) the California class allegations because

8    Plaintiff's present an impermissible fail-safe class, which is any class "defined in a

9    way that precludes membership unless the liability of the defendant is established."

10   *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010). In *in re Google

11   Generative AI Copyright Litigation*, for example, the Court found the class definition

12   was a fail-safe class because "Plaintiffs [] tied class membership to the *prima

13   facie* elements of their [copyright] infringement claims." 2025 WL 1159998, at *2

14   (N.D. Cal. Apr. 21, 2025). Plaintiff defines the Class as all individuals who bought a

15   TCL television advertised as having "QLED" or "QD-mini LED" display, and the

16   Class applies to those individuals who "relied on TCL's misrepresentations with

17   respect to the technological and display specifications of their purchased televisions"

18   and were "actually misled and deceived and were induced by Defendant to purchase

19   the televisions." (FAC ¶¶ 74, 107, 141.) This makes class membership dependent on

20   whether TCL made a "material" statement of fact about QLED technology (*see* FAC

21   ¶ 125), a prima facie element of Plaintiff's claims, and whether TCL *actually* deceived

22   each individual class member. These questions "involve a legal determination based

23   on the facts relevant to an individual potential class member" and "the proposed class,

24   as alleged, cannot be presently ascertained." *Brazil v. Dell Inc.,* 585 F. Supp. 2d 1158,

25   1167 (N.D. Cal. 2008). Here, "[b]ecause Plaintiff's fail-safe class definition is

26   defective as a matter of law, it is appropriate to strike it at the pleading stage." *In re

27   Google Generative AI Copyright Litigation*, 2025 WL 1159998, at *3.

28

1

## V.    **CONCLUSION**

For the reasons herein, TCL respectfully requests that Plaintiff's FAC be dismissed without leave to amend.

Dated: June 27, 2025                    **DLA PIPER LLP (US)**

By: */s/  Christopher M. Young*
    CHRISTOPHER M. YOUNG
    ISABELLE L. ORD
    ASHLEY L. BARTON
    *Attorneys for Defendant*
    *TTE Technology, Inc. d/b/a TCL North*
    *America*

## **L.R. 11-6.2. Certificate of Compliance**

The undersigned, counsel of record for Defendant TTE Technology, Inc., certifies that this brief contains 6,978 words, which complies with the 7,000 word limit of L.R. 11-6.1.


Dated: June 27, 2025              **DLA PIPER LLP (US)**

                           By: */s/  Christopher M. Young*
                              Christopher M. Young

## **L.R. 7-3 Certification**

I certify that the parties by videoconference on June 20, 2025, and thoroughly discussed each and every issue raised in this Motion, and attempted in good faith to resolve the motion in whole or in part.


Dated: June 27, 2025                    **DLA PIPER LLP (US)**

By: */s/  Christopher M. Young*
                    Christopher M. Young